WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcelle Desiderio, | No. CV-17-04058-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Marcelle Desiderio seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits under the Social Security Act (the "Act"). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Rule 16.1 of the Local Rules of Civil Procedure. For the following reasons, the Court reverses the Commissioner's decision and remands for a determination of benefits.

I.     **Procedural Background**

In September 2013, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Act. (Tr. 17.)[1] Plaintiff alleged disability beginning on June 30, 2011. (*Id*.) After denial on initial review and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr 17-30.) After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the

---

[1] The abbreviation "Tr." refers to the administrative record filed at document 14.

Act. (*Id*.) The Social Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

**II.     Administrative Record**

The record before the Court establishes the following history of diagnoses and treatment related to Plaintiff's impairments of bipolar disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), and attention deficit disorder/attention deficit hyperactive disorder ("ADHD"). The record also includes several medical opinions.

**A.     Medical Treatment Evidence**

**1.     Jewish Family and Children's Services**

On January 23, 2012, Plaintiff sought treatment at Jewish Family and Children's Services ("JFCS") for her bipolar and anxiety disorders. (Tr. 403-05.) Plaintiff reported a long history of mental health issues and treatment. (Tr. 403.) Plaintiff reported crying spells, diminished ability to think and concentrate, feelings of hopelessness, social isolation, irritability, racing thoughts, compulsive shopping, and decreased need for sleep. (*Id.*) Plaintiff reported that she had recently moved from Alaska and had been off her medication for six months. (*Id.*) On examination Plaintiff had verbose and rapid speech, an irritable mood, and limited concentration. (Tr. 404.) She had good memory, insight, and judgment. (*Id.*) Plaintiff was diagnosed with bipolar disorder, anxiety disorder, and ADHD diagnoses. (Tr. 404-05.) In April 2012, JFCS discharged Plaintiff due to "lack of contact." (Tr. 1393.)

**2.     Marc Community Resources, Inc.**

On July 11, 2013, Plaintiff began treatment at Marc Community Resources, Inc. ("Marc"). (Tr. 945-53.) Plaintiff reported that a car accident and an attack on her dog had triggered her anxiety. (Tr. 945.) Plaintiff reported that she had extreme mood swings, was manic most of the time, and experienced depression once a month. (*Id.*) Plaintiff reported daily anxiety attacks that lasted from fifteen minutes to several hours. (*Id.*) On examination Plaintiff had rapid and loud speech, euthymic mood, and partial judgment and

impulse control. (Tr. 951.) Plaintiff had good concentration, logical thought process, intact memory, and fair insight. (*Id.*) Plaintiff was diagnosed with a mood disorder not otherwise specified ("NOS"). (Tr. 953.)

At an August 9, 2013 appointment, Plaintiff reported mania with an elevated mood, racing thoughts, decreased need for sleep, distractibility, and irritability. (Tr. 427.) Plaintiff was observed to be have loud, verbose, and pressured speech, hyperactivity, tangential thought processes, circumstantial stream of thought, manic mood, animated affect, limited insight and memory, and fair concentration. (Tr. 429.) Plaintiff was diagnosed with bipolar I disorder, "most recent mixed, severe, without psychosis," and PTSD. (*Id.*) During an August 2013 appointment, Plaintiff reported "marked" mood swings and difficulty sleeping. (Tr. 419.) Plaintiff had verbose speech, concrete stream of thought, labile mood, limited memory, and fair insight and concentration. (Tr. 420.) In October 2013, she reported racing thoughts and an "ok" mood. (Tr. 998.) On examination Plaintiff's speech was verbose with a pressured rate, her stream of thought and thought processes were tangential, her affect was labile, and her insight was limited and her concentration was fair. (*Id.*) In December 2013, Plaintiff reported racing thoughts, paranoid ideation, and an "up and down" mood. (Tr. 993.) On examination Plaintiff had verbose and rapid speech, tangential stream of thought, labile mood, animated affect, limited insight and memory, and fair concentration. (Tr. 994.) At a January 3, 2014 appointment, Plaintiff had verbose speech, elevated mood, an unremarkable stream of thought and thought processes, limited memory, and fair insight and concentration. (Tr. 991.)

### 3. Counseling

Plaintiff received counseling from Diane Clodi, Licensed Professional Counselor ("LPC") from July 2013 through January 2014. (Tr. 415-36, 958-85.) During her initial appointment with LPC Clodi, Plaintiff reported anxiety, crying spells, fatigue, irritability, loss of motivation, mood swings, and reduced ability to carry out work. (Tr. 435.) At a July 16, 2013 appointment, Plaintiff reported she typically experienced manic episodes.

(Tr. 433.) During her appointments with Plaintiff LPC Clodi observed that Plaintiff presented with anxious, elevated, hypomanic, agitated, or depressed moods, and animated or depressed affect. (Tr. 415, 423, 425, 428, 431, 433, 958, 960, 962, 964, 968, 970.)

Ellen McDow, LPC, assumed Plaintiff's counseling from March 2014 through March 2016. (Tr. 956, 1073.) LPC McDow observed that Plaintiff's mood ranged from agitated, angry, anxious, euthymic, depressed, and expansive to hypomanic. Her affect ranged from animated to labile. (Tr. 954-55, 1006, 1009, 1011, 1013, 1016-17, 1019, 1021-23, 1025, 1027-31, 1033, 1036, 1074, 1076-77, 1080, 1082-83, 1430, 1432, 1442, 1453, 1455, 1462, 1464, 1466, 1472, 1476, 1486, 1500, 1506, 1514, 1518.)

### 4. Francisco A. Neufeld, M.D.

On December 31, 2013, Francisco A. Neufeld, M.D., performed a psychiatric assessment of Plaintiff. (Tr. 927-32.) Plaintiff reported experiencing "mania most of the time, with isolated and infrequent episodes of depression." (Tr. 927.) Her symptoms of mania included elevated mood, irritability, impulsivity, racing thoughts, flights of ideas, loose associations, and loud speech. (Tr. 931.) Plaintiff also reported daily anxiety. (Tr. 927.) On examination, Plaintiff had hyperactive motor activity, intense affect, an elevated mood, loud and spontaneous speech, good concentration, good insight, good judgment, and intact memory. (Tr. 929-30.) Dr. Neufeld diagnosed bipolar disorder diagnosis and prescribed Lithium. (Tr. 931.)

At a January 31, 2014 appointment, Plaintiff reported that she had been taking Lithium for three weeks and had not noticed any changes in her mood. (Tr. 933.) Plaintiff continued to feel hyperactive and irritable, she had disruptive sleep but still had high energy during the day. (*Id.*) Dr. Neufeld observed Plaintiff had a euthymic/anxious/irritable mood, labile affect, and rapid speech. (Tr 934.) Plaintiff's memory, insight, and judgment were good, and she had an intact memory. (*Id.*) Dr. Neufeld increased Plaintiff's Lithium dose, discontinued Lorazepam, and prescribed Ambien. (*Id.*) At a June 11, 2014 appointment, Plaintiff reported "feeling much better" with decreased irritability and impulsivity following the adjustment of her medication. (Tr. 936.) Plaintiff reported being

able to finish projects without feeling overwhelmed, but she continued to experience anxiety due to PTSD. (*Id.*) On examination Plaintiff had an animated affect and "occasionally loose" thought associations. (Tr. 937.) Plaintiff had good memory, insight, judgment, and concentration. (*Id.*) Dr. Neufeld diagnosed bipolar disorder, unspecified; ADHD, "predominately hyperactive impulsive," and PTSD. (Tr. 938.) Dr. Neufeld prescribed Oxcarbazepine, Temazepam, and Adderall XR. (Tr. 937-38.) In August 2014, Plaintiff reported that Adderall helped her overall mood, and she was "feeling much better" and experiencing less anxiety and irritability. (Tr. 939.) Plaintiff continued to report frequent, mild anxiety, which was helped by Alprazolam. (*Id.*) On examination Plaintiff had an irritable mood, an animated affect, verbose and rapid speech, and circumstantial stream of thought. (Tr. 940.) She had good memory, judgment, concentration, and insight. (*Id.*)

At an October 2014 appointment, Plaintiff reported that she had stopped taking Oxcarbazepine because of "gastric discomfort." (Tr. 1038.) Dr. Neufeld recommended that Plaintiff take Oxcarbazepine at bedtime to avoid side effects. (Tr. 1038-39.) On examination Plaintiff' had a circumstantial stream of thought. (*Id.*) Plaintiff had a fair mood, labile affect, and good memory, concentration, and judgment. (Tr. 1039.) In January 2015, Plaintiff reported inability to swallow the Oxcarbazepine because of the large pill size. (Tr. 1186.) On examination Plaintiff had an irritable mood, animated affect, verbose speech, a circumstantial thought processes and stream of thought, good memory, good insight and judgment, and good concentration. (Tr. 1187.) Dr. Neufeld discontinued Oxcarbazepine and added Lamotrigine. (*Id.*)

On February 26, 2015, Plaintiff reported that since she had started taking Lamotrigine, her psychiatric symptoms had improved, but she had pain in her middle back. (Tr. 1183.) In March 2015, Plaintiff reported "feeling better" on her current medication regimen, but she still had occasional episodes of irritability and impulsivity. (Tr. 1180.) Plaintiff reported good sleep and appetite, a busy home routine, and an "improved ability to talk to her daughter without becoming angry." (*Id.*) On examination Plaintiff had a

euthymic mood, labile affect, and circumstantial stream of thought, good memory, good insight and judgment, and good concentration. (Tr. 1811.) Dr. Neufeld continued Plaintiff's prescribed medications of Lamotrigine, Alprazolam, and Adderall XR. (*Id*.)

At a June 18, 2015 appointment, Plaintiff reported "feeling well for the most part" but she had experienced difficulty sleeping for the previous two months, and two incidents "where she got upset and her anger escalated to the point where she was not able to maintain control." (Tr. 1176.) Plaintiff stated that she was able to "return to normal once the issues were resolved." (*Id*.) On examination Plaintiff had an irritable mood, labile affect, circumstantial stream of thought, good memory, and good insight and concentration. (Tr. 1177.) In August 2015, Plaintiff reported "feeling well" and that her irritability and impulsivity had decreased with medication. (Tr. 1418.) On examination Plaintiff had a euthymic mood, a labile affect, a circumstantial stream of thought, good memory, and good insight and judgment. (Tr. 1419.) Dr. Neufeld continued Plaintiff's medications. (*Id*.)

In October 2015, Dr. Neufeld noted that Plaintiff's "target symptoms" were unstable mood manifested by "irritability and angry outbursts, impulsivity, difficulty concentrating, and frequent episodes of nightmares and flashbacks." (Tr. 1554.) Plaintiff continued to have "road rage," but to a lesser extent than before. (*Id*.) Plaintiff reported improved concentration with Adderall. (*Id*.) Dr. Neufeld noted that Plaintiff had consistently taken her medication since 2013, reported that it made a "big difference," and that she experienced no negative side effects. (*Id*.) In December 2015, Plaintiff reported difficulty multitasking and maintaining concentration for extended periods of time, but improvement in her mood-related symptoms. (Tr. 1550.) At a March 23, 2016 appointment, Plaintiff reported several episodes of crying following a car accident that had triggered flashbacks. (Tr. 1530.) Plaintiff reported experiencing less frequent mood "ups and downs." (*Id*.) On examination Plaintiff had a labile affect, verbose speech, and good memory and insight. (Tr. 1532.) Dr. Neufeld continued Plaintiff's medications. (*Id*.)

///

///

### B. Medical Opinion Evidence

#### 1. Non-Examining Physicians

As part of the initial Agency determination, in May 2014, Joan Holloway, Ph.D., reviewed the medical records and completed a mental residual functional capacity ("RFC") assessment. (Tr. 85-86.) Dr. Holloway opined that Plaintiff could "perform simple work and some complex tasks with routine supervision. She [could] interact superficially with others for work purposes. She [could] adapt to a work situation." (*Id.*) As part of the reconsideration determination, in October 2014, Stephen Bailey, Ed.D., reviewed the medical record and assessed the same non-exertional abilities. (Tr. 109-11.)

#### 2. Diane Clodi, LPC

On September 6, 2013, LPC Clodi completed an assessment of ability to perform mental work-related activities. (Tr. 412-13.) LPC Clodi found that Plaintiff had moderately severe limitations ("[o]ff task 16-20% of an 8-hour workday") in her abilities to understand, carry out, and remember instructions, respond to customary work pressures, and to relate to people. (Tr. 412.) LPC Clodi stated that Plaintiff's psychiatric symptoms affected her ability to sustain work pace and would cause her to be off task 16-20% of an 8-hour workday. (Tr. 413.)

#### 3. Francisco Neufeld, M.D.

On September 3, 2015, Dr. Neufeld completed an assessment of ability to perform mental work-related activities. (Tr. 1225-26.) Dr. Neufeld opined that Plaintiff had moderately severe limitations (defined as "[o]ff task 16-20% of an 8-hour workday") in her abilities to relate to people and to respond appropriately to supervision, coworkers, and customary work pressures. (Tr. 1225.) Dr. Neufeld also stated that Plaintiff's psychiatric symptoms affected her ability to sustain work pace, such that she would be off task 16-20% of an 8-hour workday. (Tr. 1226.)

## III. The Administrative Hearing

Plaintiff was fifty-one years old as of the date of the administrative hearing. (Tr. 42.) She had a high school equivalency degree. (Tr. 43.) Plaintiff testified that she

could not work because she had mood swings, panic attacks, and was "overwhelmed" very easily and would go home and "crawl into bed." (Tr. 46.) Plaintiff stated that she had weekly panic attacks during which she tried to avoid people. (Tr. 47.) The panic attacks lasted fifteen minutes or longer and left Plaintiff drained and exhausted. (Tr. 48.) Plaintiff testified that she spent time with family, but that it could be overwhelming. (*Id.*) Plaintiff was taking two community college classes, but she had not completed assignments. (Tr. 49.) Plaintiff testified that episodes of depression affected her and that she had "stayed in bed for like a week, not showered, not brush[ing her] teeth, not chang[ing her] clothes, sometimes I'm literally under the covers." (Tr. 50.) Plaintiff stated that she experienced symptoms of PTSD, including flashbacks of abuse and domestic violence, "maybe three to five times a week" depending on her surroundings, that left her feeling "emotionally drained." (Tr. 51-52.) Plaintiff stated that she napped for at least three hours of a typical day due to her PTSD, panic attacks, or medication. (Tr. 52.)

## IV.    The ALJ's Decision

A claimant is considered disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits). To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

### A.    The Five-Step Sequential Evaluation Process

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that she is not presently engaged in a substantial gainful activity, and (2) that her medically determinable impairment or combinations of impairments is severe. 20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c). If a claimant meets steps one and two, there are two ways in which she may be found disabled at steps three through five.

At step three, she may prove that her impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(d). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether a claimant's RFC precludes her from performing her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

**B.    The ALJ's Application of the Five-Step Evaluation Process**

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder; anxiety; post-traumatic stress disorder; and attention deficit disorder/attention deficit hyperactive disorder (20 CFR 404.1520(c))." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (Tr. 22.)

The ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels." (Tr. 23.) The ALJ added that Plaintiff had non-exertional limitations. (*Id.*) Plaintiff could "perform simple and some complex tasks with routine supervision; she can interact superficially with others for work purposes; and she can adapt to a work situation." (Id.) At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. (Tr. 28.) At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, she could perform other work that existed in significant numbers in the national economy. (Tr. 28-29.) Therefore, the ALJ concluded

that Plaintiff had not been under a disability as defined in the Act from the alleged onset date of June 30, 2011 through March 31, 2015, the date last insured. (Tr. 29.) The ALJ denied Plaintiff's application for a period of disability and disability insurance benefits. (Tr. 30.)

## V.    Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted). The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

///

///

1    **VI.    Plaintiff's Claims**

2         Plaintiff raises the following claims: (1) the ALJ erred by rejecting the opinions of

3    LPC Clodi and Dr. Neufeld; (2) the ALJ erred by failing to provide clear and convincing

4    reasons for rejecting Plaintiff's symptom testimony; and (3) the ALJ erred by relying on

5    the Medical and Vocational Guidelines (the "Grids") to find Plaintiff not disabled.

6    (Doc. 21 at 1-2.)  The Commissioner asserts that the ALJ's decision is free from harmful

7    error and is supported by substantial evidence.  (Doc. 22.)  As set forth below, the Court

8    finds that the ALJ erred in rejecting the medical opinion evidence and Plaintiff's symptom

9    testimony.  Therefore, the Court does not consider whether the ALJ erred in relying on the

10   Grids.

11        **A.    Weighing Medical Source Opinions**

12        In weighing medical source opinion evidence, the Ninth Circuit distinguishes

13   between three types of physicians or treating sources: (1) treating physicians, who treat the

14   claimant; (2) examining physicians, who examine but do not treat the claimant; and

15   (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v.*

16   *Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight is given to a treating

17   physician's opinion.  *Id.*  The ALJ must provide clear and convincing reasons supported

18   by substantial evidence for rejecting a treating or an examining physician's uncontradicted

19   opinion.  *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  An ALJ may

20   reject the controverted opinion of a treating or an examining medical source by providing

21   specific and legitimate reasons that are supported by substantial evidence in the record.

22   *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

23        Opinions from non-examining medical sources are entitled to less weight than

24   opinions from treating or examining physicians.  *Lester*, 81 F.3d at 831.  Although an ALJ

25   generally gives more weight to an examining physician's opinion than to a non-examining

26   physician's opinion, a non-examining physician's opinion may nonetheless constitute

27   substantial evidence if it is consistent with other independent evidence in the record.

28   *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  In addition to considering the

medical opinions of physicians, an ALJ must consider the opinions of medical providers who are not considered "acceptable medical sources." *See* 20 C.F.R. § 404.1527(b), (f) (evaluating opinion evidence for claims filed before March 27, 2017). An ALJ may give less deference to "other sources," but must provide reasons germane to each witness for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

When evaluating medical opinion evidence, the ALJ may consider the length and nature of the treating relationship, frequency of examination, "the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631; *see Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (stating that the same factors are used to evaluate the opinions of acceptable medical sources and "the opinions of those who are not.").

### 1. LPC Diane Clodi

The ALJ assigned LPC Clodi's opinion "some weight." (Tr. 26.) The ALJ found that LPC Clodi's "assessment of limitations with regard to social interaction and concentration, persistence, and pace [was] generally consistent with the medical evidence of record and other evidence of record but not to the severity of her assessment." (*Id.*)

Under the regulations, a licensed professional counselor is not considered an acceptable medical source. *See* 20 C.F.R. § 404.1513(d) (2016). Because LPC Clodi is an "other source," the ALJ needed to provide "germane reasons" for rejecting her opinions. *Molina*, 674 F.3d at 1111; *Dale v. Colvin*, 823 F.3d 941, 947 (9th Cir. 2016). The ALJ discounted LPC Clodi's opinion because, when LPC Clodi prepared her opinion in September 2013, she had only been treating Plaintiff for a few months. (Tr. 26.) The ALJ also stated that although Plaintiff "continue[d] to work on her abilities to relate to people and her concentration," the record reflected that therapy and psychiatric medication had stabilized Plaintiff's symptoms. (*Id.*)

Plaintiff asserts that the ALJ's first reason for discounting LPC Clodi's opinion was deficient because although the ALJ noted the length of the treatment relationship, he did

not consider the frequency of examination. (*Id.* (citing 20 C.F.R. § 1527(c)(2)(i)-(ii).) Plaintiff also argues that the ALJ did not consider the other factors that apply to the consideration of all medical opinion evidence, including the amount of relevant evidence that supports the opinion, the quality of explanation provided for the opinion, the consistency of the opinion, or the medical source's familiarity with other information in the record. (Doc. 21 at 14 (citing 20 C.F.R. § 404.1527(c)(3)-(6).) The Commissioner does not respond to this argument and does not defend the ALJ's reliance on the length of the treatment relationship to discount LPC Clodi's opinion. (Doc. 22 at 11.) Thus, the Court does not further consider this rationale.

However, the Commissioner argues that in his second reason for discounting LPC Clodi's opinion, the ALJ gave at least one germane reason—that it was inconsistent with other evidence. (*Id.*) The ALJ found LPC Clodi's opinion inconsistent with evidence that treatment had helped stabilize Plaintiff's symptoms. (Tr. 27 (citing B55F, B36F 6, 10).) The ALJ cited a May 26, 2015 treatment summary for July 2014 to May 2015 that LPC McDow completed. (Tr. 1201.) That treatment summary states that Plaintiff reported improvement in her relationships with her children and having "calmed down." (*Id.*) The also ALJ cited a June 30, 2015 "monthly summary" from Marc stating that Plaintiff "experienced improvement or stability in symptoms; Experienced improvement or stability in functioning." (Tr. 1197.) That treatment summary further states that Plaintiff "continued to address interpersonal issues" and recommended that she continue "EMDR" counseling. (*Id.*) The ALJ also generally cited to a twenty-eight-page administrative hearing exhibit, which includes Dr. Neufeld's treatment notes but did not identify the treatment note that supported his conclusion that Plaintiff's symptoms were stable. (Tr. 26 (citing Admin. Hrg. Ex. 55F); Tr. 1530-1557).)

Plaintiff argues that the ALJ erred by rejecting LPC Clodi's opinion as inconsistent with other evidence. (Doc. 21 at 15-16.) As the ALJ noted, treatment notes indicate that some of Plaintiff's symptoms were stable or improved. (Tr. 1201, 1197.) However, Plaintiff continued to have signs of mental impairments including irritable mood, labile

affect, verbose and rapid speech, and circumstantial stream of thought. (Tr. 940, 1181, 1178, 1419.) Additionally, "'doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)). Thus, the Court concludes that notations in the treatment records that some of Plaintiff's symptoms were stable with treatment was not a germane reason for discounting LPC Clodi's opinion regarding Plaintiff's work-related mental abilities.

### 2. Francisco Neufeld, M.D.

Dr. Neufeld opined that Plaintiff had moderately severe limitations in her abilities to relate to people, respond appropriately to supervision and co-workers, and respond appropriately to customary work pressure. (Tr. 1225-26.) Dr. Neufeld also opined that Plaintiff had moderately severe limitations in sustaining work pace and would be off task 16 to 20% of an eight-hour work day. (Tr. 1226.) The ALJ assigned "some weight" to Dr. Neufeld's opinion. (Tr. 27.) The ALJ stated that the issue of whether a claimant is disabled is reserved to the Commissioner. (*Id.*) The parties do not dispute that whether a claimant is disabled is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1).

The ALJ further stated that while "Dr. Neufeld's finding of limitations with regard to social interaction and concentration, persistence, or pace is reasonable, Dr. Neufeld's opinion that the claimant is unable to work is generally unsupported by the medical evidence of record and his own treatment notes." (Tr. 27.) The ALJ found that treatment records indicated "improvement and that [Plaintiff's] medications [were] helping; [Plaintiff] reported that she has calmed down but does have bad days." (Tr. 27 (citing Admin. Hrg. Ex. 36F at 10).) The ALJ cited other treatment records indicating that Plaintiff was "feeling well" on her medication and that she had continued to improve or stabilize in functioning. (Tr. 27 (citing Admin. Hrg. Exs. B52F, B53F at 12).)

- 14 -

The Court concludes that the ALJ's erred by rejecting Dr. Neufeld's opinion. The ALJ cited medical treatment notes indicting that Plaintiff's irritability and impulsivity had decreased, and that she continued to improve in functioning. (Tr. 1434.) However, the ALJ did not explain why evidence of improvement in these areas undermined Dr. Neufeld's opinions regarding Plaintiff's concentration, persistence, and pace in a work setting. Additionally, treatment notes indicated that Plaintiff continued to experience psychiatric symptoms despite her reported improvement. (Tr. 1176-78, 1180-81, 1418-19.) Dr. Neufeld assessed Plaintiff's abilities based on his treatment history with her and on his review of the medical records. (Tr. 1226.) Thus, the limitations he identified in his September 3, 2015 opinion accounted for Plaintiff's treatment history, including any improvement Plaintiff report in a treatment setting.

Additionally, as previously stated, "'doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Garrison*, 759 F.3d at 1017 (quoting *Hutsell*, 259 F.3d at 712); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (stating that a "[treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

The ALJ also relied on the medical opinions of reviewing physicians Dr. Holloway and Dr. Bailey as substantial evidence to support his disability determination. (Tr. 26.) However, these opinions—of physicians who reviewed the medical records in 2014—are insufficient to outweigh the opinion of a treating physician who treated Plaintiff over a period of time. (Tr. 1038-56, 1176-91); *see* 20 C.F.R. §§ 404.1527(c)(2); *Garrison*, 759 F.3d at 1013 (stating that the ALJ erred by relying on a non-examining physician's opinion that differed from the treating physician's opinion, and that was completed earlier in the course of treatment without access to all of the claimant's treatment records). Therefore,

the record does not include substantial evidence to support the ALJ's reasons for rejecting Dr. Neufeld's opinion.

### B. Plaintiff's Symptom Testimony

Plaintiff asserts that the ALJ erred by failing to provide clear and convincing reasons for discounting her subjective complaints. (Doc. 21 at 20-24.) The Commissioner defends the ALJ's assessment of Plaintiff's symptom testimony. (Doc. 22 at 3-8.) As discussed below, the Court finds that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony.

An ALJ uses a two-step analysis to evaluate a claimant's subjective symptom testimony. *Garrison*, 759 F.3d at 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "can reasonably produce the degree of symptom alleged." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). At this second evaluative step, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504

F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for discounting the symptom testimony. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Plaintiff testified that she had panic attacks, mood swings, and that she was frustrated and angry. (Tr. 24.) Plaintiff testified to having weekly panic attacks that lasted at least fifteen minutes and exhausted her. (*Id.*) She testified that she took three-hour naps daily (Tr. 52), and that her symptoms waxed and waned. (Tr. 24.) Plaintiff testified that she had symptoms of not feeling a safe and nightmares from PTSD. (*Id.*) The ALJ discounted Plaintiff's testimony regarding the severity of her symptoms. (*Id.*)

### 1.    Lack of Objective Support

The ALJ discounted Plaintiff's symptom testimony because he found that "the objective medical record fail[ed] to support the severity of the impairments and symptoms alleged." (Tr. 24.) After a claimant produces objective medical evidence of an underlying impairment, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray*, 554 F.3d at 1227. However, it is a relevant factor in determining the severity of a claimant's symptoms. *Rollins v. Massanri*, 261 F.3d 853, 857 (9th Cir. 2001). Therefore, the ALJ could consider a lack of corroborating evidence in determining the severity of Plaintiff's symptoms but could not reject Plaintiff's testimony solely on this basis.

### 2.    Improvement with Treatment

The ALJ discounted Plaintiff's symptom testimony because he concluded that the record demonstrated that treatment and medication had improved her symptoms. (Tr. 25-26.) The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3). However, that "symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve

with time" does not support a general conclusion that a claimant's subjective symptom testimony is entitled to less weight. *See* SSR 16–3p, 2016 WL 1119029 at *8. Additionally, "symptom-free periods may be consistent with disability." *Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1166 (D. Or. 2010); *see Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.") Thus, the ALJ erred by relying on Plaintiff's reports of improvement in her mental health symptoms to discredit her symptom testimony.

### 3. Work History

The ALJ discredited Plaintiff's symptom testimony because she had a long history of bipolar disorder and panic attacks that predated the disability onset date of June 30, 2011, but there was evidence that Plaintiff had worked prior to 2011 "with her mental impairments." (Tr. 25.) Plaintiff did not challenge this rationale in her opening brief. (Tr. 21.) However, the Commissioner defends this rationale in its response, and Plaintiff challenges it in her reply. (Doc. 22 at 7; Doc. 25 at 8.) Evidence that Plaintiff worked before the alleged disability onset date, and that she had a history of bipolar disorder and panic attacks, does not address the severity of Plaintiff's impairment at that time or indicate that Plaintiff could continue to work after the disability onset date.

### 4. Gaps in Treatment

The ALJ also discounted Plaintiff's symptom testimony because she had approximately a one-year gap in treatment in between her move from Alaska to Arizona in December 2011. (Tr. 25.) Plaintiff resumed treatment in Arizona, but she was discharged from treatment in April 2012 due to lack of contact. (*Id.*) The record reflects that Plaintiff resumed treatment in 2013 and continued with treatment through the date of the administrative hearing.

The medical treatment a plaintiff seeks to relieve her symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416.929(c)(3)(iv), (v). Unexplained, or inadequately explained, failure to seek treatment or follow a

prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *See Orn*, 495 F.3d at 638. When the evidence suggests failure to seek mental health treatment is related to the claimant's mental health condition, it may be inappropriate to consider a claimant's gaps in mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Under the regulations, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 16-3p, 2016 WL 5180304, at *9-*10. During the administrative hearing, the ALJ did not inquire about the gaps or inconsistencies in treatment. (Tr. 41-55.) Additionally, the ALJ did not cite to any evidence in the record that may have explained the gaps in treatment. Because the ALJ did not consider any reasons for the gaps in treatment, the ALJ erred in relying on this reason to discredit Plaintiff's symptom testimony.

### 5. Daily Activities

Finally, Plaintiff argues that the ALJ erred in rejecting her symptom testimony based on her daily activities. (Doc. 25 at 7-8.) The Commissioner asserts that the ALJ properly discounted Plaintiff's symptom testimony because he found it inconsistent with her daily activities. (Doc. 22 at 5-6.) The ALJ noted that Plaintiff reported having calmed down, driving more safely, exercising regularly, and that she could complete activities of daily living. (Tr. 26.) An ALJ may reject a claimant's symptom testimony if the severity of the alleged symptoms is incompatible with the claimant's daily activities. *See Burch*, 400 F.3d at 681. Daily activities may also be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn,* 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Here, the ALJ did not make any finding on the frequency that Plaintiff engaged in the activities that he mentioned in his opinion or whether these activities were transferrable to a work setting. (Tr. 26.) Additionally, the ALJ did not explain why the cited activities, driving, exercising, and completing "activities of daily living"—were inconsistent with the severity of Plaintiff's reported symptoms. (*Id*.) Accordingly, Plaintiff's daily activities were not a legally sufficient reason for discounting her symptom testimony and the ALJ erred by discounting Plaintiff's symptom testimony based on her daily activities. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (finding that ALJ erred by relying on claimant's childcare activities to discount the severity of claimant's symptoms when there were no details regarding those activities). Thus, the ALJ erred by failing to give legally sufficient reasons for discounting Plaintiff's symptom testimony.

### C.     Application of the Grids

Plaintiff argues that the ALJ erred by applying the Grids to determine that she was not disabled at step five the sequential evaluation process. (Doc. 21 at 24.) Plaintiff states that this issue will be moot if the Court concludes that the ALJ erred by discounting the opinions of LPC Clodi and Dr. Neufeld and Plaintiff's symptom testimony. (*Id*.) The Court agrees that it need not reach this issue based on its determination that the ALJ erred in rejecting the medical opinion evidence and Plaintiff's symptom testimony.

## VII.     Remand for Further Proceedings or an Award of Benefits

After finding harmful error, the Court may, in its discretion, remand for additional proceedings or to award benefits. *Reddick*, 157 F.3d at 738. Under the Ninth Circuit's credit-as-true standard, courts may credit as true improperly rejected medical opinions or claimant testimony and remand for an award of benefits if each of the following conditions is satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citing *Ryan*, 528 F.3d at

1202). If the "credit-as-true rule" is satisfied, the court may remand for further proceedings, instead of for an award of benefits, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. Plaintiff argues that if her symptom testimony or the opinions of LPC Clodi and Dr. Neufeld were credited as true, she would be entitled to benefits. (Doc. 21 at 18-19, 22-23.)

A vocational expert did not testify at the administrative hearing and so there is no vocational testimony addressing how the limitations identified in the treating sources' opinions or Plaintiff's symptom testimony would affect Plaintiff's ability to work. However, the court may nonetheless consider that evidence when determining the appropriate remedy. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). In *Benecke*, the Ninth Circuit explained that "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." *Id.*

In this case, Dr. Neufeld and LPC Clodi opined that Plaintiff's psychiatric symptoms would cause her to be off task 16 to 20% of an eight-hour work day. (Tr. 1226, 413.) Courts have found that when a claimant will be off task up to 20% of a work day, the claimant cannot work. *See e.g., Popa v. Berryhill*, 872 F.3d 901, 908 (9th Cir. 2017) (remanding for an award of benefits when the vocational expert testified that a person who would be off task 10% of the time would not be competitively employable); *Smith v. Berryhill*, 2017 WL 3188619, at *11 (W.D. Wash. July 26, 2017) (remanding for an award of benefits when vocational expert testified that a person who would be off task for 15% of an eight-hour day could not sustain employment); *Fuller v. Colvin*, 164 F. Supp. 3d 1266, 1275 (D. Oregon Feb. 23, 2016) (remanding for an award of benefits when vocational expert testified that a person who would be off task 20% of the time could not maintain competitive work); *Sullivan v. Astrue*, 2012 WL 3930342, at *2 (C.D. Cal. Sept.

7, 2012) (remanding for an award of benefits when vocational expert testified that a claimant could not work if he was off task 20% of the time); *see also Cash v. Astrue*, 2010 WL 2888973, at *5 (C.D. Cal. July 20, 2010) (remanding for award of benefits because a doctor's assessment that the claimant would miss work three or more days per month indicated that the claimant must be disabled, even though the vocational expert did not testify about that specific limitation). Thus, if Dr. Neufeld's and LPC Clodi's opinions that Plaintiff would be off task 16 to 20% of an eight-hour day are credited as true, Plaintiff would be disabled under the Act. Additionally, the record does not create serious doubt as to whether Plaintiff is disabled under the Act. *See Garrison*, 759 F.3d at 1021.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this matter is remanded for a determination of benefits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and terminate this case.

Dated this 12th day of February, 2019.


_____
Bridget S. Bade
United States Magistrate Judge